## SECURITY STATE BANK v. DAWSON et al.
### (No. 2916.)

(Court of Civil Appeals of Texas. Texarkana. May 1, 1924.)

**1. Principal and surety ⟜97—Material alteration of contract releases surety.**

Material alteration of contract releases surety.

**2. Principal and surety ⟜115(1)—Surety discharged by creditor's release of security.**

Surety is wholly or partially discharged by creditor's release of any security held by him.

**3. Principal and surety ⟜115(2)—Surety not discharged by creditor's unperformed collateral contract to release lien.**

Surety on note secured by deed of trust *held* not discharged from liability by payee's collateral contract with maker to release lien on certain conditions, where nothing was done thereunder.

**4. Principal and surety ⟜115(2)—Collateral agreement as to mortgage held not alteration of contract.**

Collateral agreement by payee of note secured by deed of trust to extend time for payment, as authorized by note, and permit maker to sell or secure loan on mortgaged land on condition that he apply purchase money or cash secured on debt and give second lien notes for balance, *held* not alteration of contract lessening value of security, so as to discharge surety not notified thereof.

**5. Principal and surety ⟜41—Surety not released by alteration of contract before his execution.**

Surety is not released by alteration of contract before execution thereof by him, where no fraud is pleaded.

Appeal from District Court, Delta County; Silas Hare, Jr., Special Judge.

Action by the Security State Bank against C. V. Dawson and others. From portion of judgment denying recovery against named defendant, plaintiff appeals. Reformed and affirmed.

L. L. James, of Cooper, and W. M. Taylor and Love & Rutledge, all of Dallas, for appellant.

Joel H. Berry and A. T. Stell, both of Cooper, for appellees.

HODGES, J. In November, 1921, the appellant sued C. R. Dawson and wife and C. V. Dawson on a promissory note given for the sum of $4,531.25. It also sought the foreclosure of a lien on a tract of 90 acres of land mortgaged to secure the payment of the note. C. R. Dawson and wife made only a formal defense to the debt sued for, but pleaded specially that the land was the separate property of Mrs. Dawson and was their homestead at the time the deed of trust evidencing the lien was executed. C. V. Dawson pleaded that he was only a surety on the note, and that his liability thereon had been expressly limited to $3,000 and interest on that sum. He further pleaded substantially the following facts:

That in December, 1919, he became a surety for his brother upon a note for the sum of $3,000, payable to the Farmers' National Bank of Cooper, Tex. On August 23, 1920, that note, together with other indebtedness of C. R. Dawson was renewed with this defendant as a surety. In order to indemnify defendant against probable loss on both the original and the renewal note, C. R. Dawson, joined by his wife, executed and delivered to the bank a deed of trust lien upon the land described in the plaintiff's petition. At the time of the execution of the original note for the sum of $3,000 the deed of trust was given to secure that note 'alone. When the indebtedness was renewed, the trust deed was given to secure the entire debt, but with the express agreement between defendant and the bank that the land should be as security for that portion of the debt for which he became surety. At the time the renewal note was given, the Farmers' National Bank, acting through its cashier, entered into a written agreement with C. R. Dawson granting the latter permission to sell and otherwise incumber the land upon which the deed of trust had been given. That this written agreement between the bank and C. R. Dawson was a material alteration of the contract signed by defendant as surety, and varied the terms of the deed of trust. That this collateral agreement was executed between the bank and C. R. Dawson without the knowledge or consent of defendant, and became a part of the contract to which he did not assent. He further alleged that the plaintiff in this suit purchased that note after maturity, with full knowledge of the supplemental agreement, and is therefore bound by its terms. He claims that by rea-

son of the collateral agreement, made as before stated, he has been legally discharged as surety.

In response to special issues submitted, the jury found that the land was not the homestead of C. R. Dawson and wife, and that C. V. Dawson signed the note as surety without notice of the existence of the collateral agreement referred to in his pleading. Upon those findings the court entered a judgment in favor of the appellant against C. R. Dawson for the amount of the debt, and against both C. R. Dawson and his wife for the foreclosure of the deed of trust lien on the land; but refused to render a judgment in favor of the plaintiff for any amount against C. V. Dawson as surety. The appeal is by the Security State Bank from that portion of the judgment which denied it a recovery against C. V. Dawson.

It appears from the evidence that this debt originated in the manner stated by the appellee in his special plea. The note sued on was dated August 23, 1920, payable to the Farmers' National Bank of Cooper, Tex., and was due January 1st after date. The names of C. R. Dawson and Mary Dawson appear as principals, and that of C. V. Dawson as surety. Below the signatures appears this notation: "C. V. Dawson's liability is up to $3,000.00 and int. on such amount only." The record shows that in August, 1920, C. R. Dawson was indebted to the Farmers' National Bank of Cooper in the aggregate sum of $4,531.25. A part of this debt was evidenced by a promissory note for $3,000, on which his brother C. V. Dawson was surety. That note was secured by a deed of trust in favor of the bank on the same land mortgaged to secure the payment of the note involved in this suit. When that indebtedness matured, C. R. Dawson was unable to pay it, and it was merged in the note sued on and further time given. A new deed of trust was executed on the same land to secure the payment of the new note. At that time, according to the testimony of C. R. Dawson, which is not disputed, he did not agree to give any additional personal security and did not know that his brother was to become a surety on the new note. He stated that he then believed that unless he could sell some of his land he would be unable to pay this note at maturity, and, in order to enable him to sell the land, or secure a long-time loan from some other source, he had the following written agreement with the Farmer's National Bank:

"The Farmers' National Bank.

"Cooper, Texas, August 23d, 1920.

"Mr. C. R. Dawson, McKinney, Texas—Dear Sir: With reference to your note for $4,531.25 made this day and payable to the Farmers' National Bank of Cooper, Texas, with ten per cent. interest for date and payable January 1st, 1921, we hereby agree to the following and bind ourselves by it: That owing to the fact that said note is secured by a deed of trust to two tracts of land of about ninety acres in all, located in Delta county, we state this: That if at the time said notes become due we agree to renew same upon the same or renewed deed of trust for a period not to exceed one year from January 1st, 1921—we further agree to release our lien if at any time between now and January 1st 1921, you have a chance to put said land in loan or sell it, under the conditions that you pay this bank the amount of the above-described note or as much cash as you may receive, it being understood that if there still remains some unpaid balance you are to give us a new deed of trust or vendor's lien notes against said place to secure payment on unpaid balance. Said vendor's lien notes are to be second lien if buyer desires to put in loan. The said note is signed C. R. Dawson, Mary Dawson and C. V. Dawson. C. V. Dawson signs as surety and is liable for only $3,000.00 and interest on that amount.    [Signed] B. G. Poteet, Cashier.

"Agreeable to me.    C. R. Dawson, Maker note."

The option given in this instrument was never exercised. The land was not sold nor was any other loan procured, but it remained subject to the deed of trust according to its original terms. Some days after the signing of the note by C. R. Dawson and wife the cashier of the Farmers' National Bank approached C. V. Dawson and requested him to sign the note as surety. The following is C. V. Dawson's testimony as to what then occurred:

"Mr. Poteet (the cashier) presented that note to me, and when he did it I told him it was for more than I had signed, and I was not going to sign it unless the place stood for me like it did, and he said it did like it had always done, and he showed me in the deed of trust, and the note too, that what I signed was for $3,000, and I made him show me that the place stood for me like it always did. I told him I would not sign it unless it did, and he told me it did, and I signed it. He told me that the deed of trust absolutely stood for me like it always did. I told him that I did not want to sign that big a note, and that it was all mixed up, and he told me that I would be in no danger in signing it—he would assure me of that. * * * He said the bank would be more than glad to get the land at $3,000, and I was running no risk in signing it for $3,000. Those were all the statements he made in regard to the matter, that I now remember. At the time I signed the note, or at the time the deed of trust was given, I did not see the instrument you hand me [the collateral agreement copied above]. I did not see any agreement like that. I did not know anything about this agreement at that time, and did not know anything about the agreement until after this suit was filed."

Poteet, the cashier, testified that he called Dawson's attention to this collateral agreement at the time the latter signed the note. But the jury determined that issue in favor of the version given by Dawson, and we must assume, in the further consideration of this case, that C. V. Dawson did not know

of the existence of the collateral agreement with his brother when he became surety on the note.

[1, 2] The question then is, Does that fact relieve the appellee of liability as surety? Manifestly the judgment in his favor was based upon the conclusion that the existence of such a collateral agreement, and his ignorance of the fact that it had been entered into at the time he became a surety exonerated C. V. Dawson from any liability on the note. The ruling of the trial court can be defended only upon the ground that the execution of this collateral agreement was, under the circumstances, a material modification or alteration of the contract after its execution, or that it was a legal relinquishment of the security upon which C. V. Dawson as surety had a right to rely for indemnity. The general rule is that when the contract which the surety guarantees is materially altered the surety is released. This results because the modification is tantamount to the making of a different contract from that to which the surety was a party, and the substitution of one which he did not guarantee. It is also well settled that a surety is wholly or partially discharged by a release on the part of the creditor of any security held by the latter for the payment of the debt. This rule rests upon the legal right of the surety to pay the debt and be subrogated to whatever security the creditor held. Murrell v. Scott, 51 Tex. 526; Bennett v. Taylor (Tex. Civ. App.) 93 S. W. 704; Burns v. Staacke (Tex. Civ. App.) 53 S. W. 354; Lowe v. Reddan, 123 Wis. 90, 100 N. W. 1038, 3 Ann. Cas. 431, and cases cited in the notes.

[3] The appellee cannot in this instance claim a discharge from liability upon the ground that the creditor released the security held for the payment of the note. Notwithstanding the collateral contract with C. R. Dawson as to what the latter might do under the contingencies named in that agreement, nothing was ever done. The land remained bound by the terms of the original deed of trust, and the lien was actually foreclosed in this suit. The appellee now has the full benefit of all the security he contracted for.

[4] The next inquiry is, Was there an alteration of a contract to which C. V. Dawson, as surety, was a party? The note was not changed in any respect. It is true the collateral agreement bound the bank to make an extension of time for payment under certain conditions, but no extension was ever actually made. But, even if there had been, the note expressly provided that the indebtedness might be extended without notice to the surety. Other portions of the agreement related only to the deed of trust, and this instrument was only an incident to the note. Womack v. Paxton's Ex'rs, 84 Va. 9, 5 S. E. 550. The appellee was not a party to the deed of trust. All he can claim is that this instrument was taken for his protection. As stated in the last case above referred to:

"The contract of the surety, as well as of the principal, was that the debt should be paid; and to this contract the deed of trust was a mere incident—a mere security for the enforcement of the debt—and the contract cannot be said to be in any proper sense altered or varied by the mere alteration in the terms of sale of this security."

Moreover, a careful analysis of the collateral agreement shows that it did not provide for any lessening of the value of the security evidenced by the deed of trust. It was stipulated that the place might be sold and the purchase money applied to the extinguishment of the debt. It was also agreed that the owner might secure a long-time loan on the land, provided he would pay on the note all the cash he secured in that loan, and the bank should in that event take second lien notes for the balance due. Certainly such an agreement, had it been fully performed, would not subject the bank to any less security than that evidenced by the deed of trust. The appellee was concerned only in the value of the security, not in the terms of the contract by which it was created.

[5] For still another reason the defense of alteration of the contract is not here available. The rule which releases a surety under such conditions applies only when the alteration is made after the contract involved has been executed by the party claiming the release. In this case the undisputed proof shows that the collateral agreement relied on to constitute an alteration was entered into and signed by C. R. Dawson and the bank some days before the appellee signed the note. No change of any character was made after he signed the note. His grievance, if he had any, resulted from some form of deception as to the exact character of the contract creating the lien on the land. No complaint of fraud or deception is made, and would not, under the facts, be a good defense if fraud had been pleaded.

We are of the opinion that under the undisputed evidence the plaintiff was entitled to recover a judgment against C. V. Dawson as surety. The judgment will be reformed accordingly, and as reformed will be affirmed.