# CHARLESTON.

E.·S. HAMILTON *v.* REPUBLIC CASUALTY COMPANY *et al.*

(No. 5447)

Submitted May 18, 1926.     Decided June 1, 1926.

(Rehearing Denied November 12, 1926.)

1. CONTRACTS—SURETY—*When Property Owner Fails to Retain Until Completion of Building Specified Percentage of Estimate Due Contractor on Labor and Materials Furnished, as Provided in Contract, And Surety Suffers Material Injury Because of Such Failure, Surety Will Ordinarily be Discharged.*

   When a property owner fails to retain until the completion of a building a specified percentage of an estimate due the contractor on labor performed and materials furnished, as provided in the contract, and the surety therein suffers material injury because of such failure, the surety will ordinarily be discharged.     (p. 37.)

   (Principal and Surety, 32 Cyc. p. 223.)

2. SAME—*When Money Due Contractor on Such Estimate is Applied by Owner to Purpose Not Stipulated in Contract, Surety Not Assenting Thereto, And Risk of Surety is Thereby Increased, Surety Will Ordinarily be Discharged.*

   When money due a contractor on such an estimate is applied by the owner to a purpose not stipulated in the contract, the surety not assenting thereto, and the risk of the surety is thereby materially increased, the surety will ordinarily be discharged.     (p. 37.)

   (Principal and Surety, 32 Cyc. p. 221.)

3. SURETY—*Burden of Proof on Such Owner, Who Asserts Surety Has Waived Right to Claim Discharge.*

The burden of proof is on such owner, who asserts that a surety has waived the right to claim a discharge. Pt. 3, Syl., *Lumber Co.* v. *Friedman,* 64 W. Va. 151.    (p. 39.)

(Principal and Surety, 32 Cyc. p. 134.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of Syllabi.)

Error to Circuit Court, Fayette County.

Action by E. S. Hamilton against Shawver Construction Company, Principal, and the Republic Casualty Company, Surety, to recover for alleged breaches of a building contract. Judgment for plaintiff, defendant brings error.

*Judgment reversed; verdict set aside; case remanded.*

*Hubard, Bacon & Holt,* for plaintiff in error.
*Dillon & Mahan,* for defendant in error.

HATCHER, JUDGE:

This is an action of debt, instituted in the Circuit Court of Fayette County by E. S. Hamilton, against the Shawver Construction Company, principal, and the Republic Casualty Company, surety, to recover for alleged breaches of a building contract. The plaintiff secured a judgment for $3234.38 against the Casualty Company, which prosecutes error here.

On June 11, 1923, the Construction Company, as first party, and the plaintiff, as second party, entered into a building contract, wherein the Construction Company agreed to furnish all materials and labor, construct and complete at Oak Hill in said county, within 135 days (Sundays excluded) from June 15, a dwelling house, in accordance with certain plans and specifications made by G. C. Seibt, architect; and the plaintiff agreed to pay to the Construction Company the sum of $10,464.70 as follows: $2000.00 when an approved bond in the penalty of $10,000.00 conditioned upon complete compliance with the contract, was given by the Construction Company, and the residue of $8,464.70 to be "paid on monthly estimates to be prepared by the architect, based on work and labor performed and material on the ground, 90% of each estimate to be paid at the time of the making thereof,

and the retained percentage of 10% to be withheld by the party of the second part, pending final adjustment and the completion by the party of the first part of the acts and things required of it to be done by these presents.''

On June 22 the bond referred to in the contract was executed by the Construction Company as principal and the Casualty Company as surety.

The Construction Company began work under this contract immediately after giving the bond, but did not complete the building until 185 days after June 15. The delay was caused by several circumstances, the main one of which was the inability of the Construction Company to meet its labor and material bills. The Casualty finally advanced funds in order to secure the completion of the contract.

In his action the plaintiff seeks to recover for the delay in the completion of the building, for alleged faulty material used therein, and for certain mechanics' liens filed against the property.

There are numerous details in the contract and evidence, and many errors charged against the trial court, which we consider unnecessary to narrate. Under our view of the case, there was one act by the plaintiff which terminated his rights against the Casualty Company. Consequently we will not attempt to develop the case fully except as to that act.

Prior to the contract of June 11 the Construction Company had built two dwelling houses for plaintiff. It owed large amounts to the Dickinson Lumber Company on material for these structures. The Lumber Company was threatening to file mechanics' liens against the two houses, when the plaintiff entered into an arrangement with the Construction Company to loan it $3936.31 to pay the Lumber Company's claims. This loan was made on August 11, 1923, on which date the Construction Company executed to the plaintiff its note for the above amount due in forty days. The note was endorsed by several responsible parties, and secured by a deed of trust on a lot in Fayetteville and certain construction equipment. When the note became due on September 20, the plaintiff had the architect make an estimate of the amount then due the Construction Company under the contract of

June 11, which the architect reported to be $3736.31. The plaintiff then paid the Construction Company $800.00 in cash to enable it to pay its laborers, and credited the entire balance of the estimate, to-wit, $2936.31, on the note of the Construction Company, thereby ignoring the requirement in the contract that he retain 10 per cent of the estimate. The Casualty Company knew nothing about this transaction. The Construction Company was without funds to meet its bills at that time. This fact was known to the plaintiff. The injurious effect of diverting $2936.31 from the working capital of the Construction Company at that time is too obvious to require comment. Within a month after Sept. 20 its plight is graphically described by plaintiff as follows: "The Construction Company became bankrupt, or insolvent; they could not hire labor; they could not buy material; they could not finish the job; nobody would work for them. The laborers all refused to do anything. The men themselves that were working, members of the construction company, became demoralized and threw up their hands, and virtually quit the job. Then is when I asked the bonding company to see the contract through."

· The plaintiff would justify withholding the $2936.31 from the estimate, on the theory that payment of a debt does not necessarily have to be made in money, citing *Smith* v. *Smith* 92 W. Va. 12. In that case the County Court had charged against money due a contractor some road machinery with which it had supplied him. This court upheld that charge, but it was, as stated in the opinion, because the machinery enabled the contractor to perform his contract "and to that extent was a benefit to the surety."

*Monroe* v. *Surety Co.* 47 Wash 488, and *Museum of Fine Arts* v. *Am. Bonding Co.* 211 Mass. 124, are also realized on by plaintiff. In the first case it was explicitly stated "the payments could not have operated to the prejudice of the bonding company". In the second case, a loan was made by the owner to the contractor, to enable him to carry on the work, the contractor agreeing that future installments to become due on the work should be security for the note. The owner did not withhold any money which afterwards

became due the contractor, and in fact the note had not been paid at the time the owner sued the surety. The court held that the loan to the contractor under those circumstances "was an independent transaction and not a payment under the contract in violation of its terms and therefore that it did not relieve the sureties from·liability *pro tanto.*" In the second case there was no diversion of the money due the contractor, consequently that case can have no bearing on the present one.

But, say counsel, the loan made by plaintiff to the Construction Company was really a benefit to both the principal and the surety, in that it permitted the Construction Company "to proceed with the contract without reference to hindrance of the pressing demands of its creditors." The record does not show that demands were being pressed against the Construction Company at the date of the loan. On Aug. 11, the only threat from a creditor, disclosed by the evidence, was directed against the property of the plaintiff. We must necessarily·conclude that the purpose of the loan was to prevent the Dickinson Lumber Company from filing mechanics' liens against the two houses of plaintiff. Prior to October 1923, it was seemingly the plaintiff, and not the other creditors of the contractor, who pressed claims against it. Counsel also say that it was to the benefit of both principal and surety that the plaintiff withheld from the estimate the $2936.61 as a credit on the note, instead of selling the contractors equipment as he had the right to.do under the deed of trust. The sale of the equipment was not plaintiff's only means for collecting the note. Valuable real estate was included in the trust deed, which was just as subject to sale as the equipment. There were responsible endorsers on the note, of whom payment could have been exacted. It was certainly of no benefit to the surety for the plaintiff to deprive the contractor of means of paying his current bills. The diversion of so large a sum as $2936.61 from its working capital was a vital blow to the Construction Company, from which it did not recover. The contention of benefit to the contractor and surety because of the diversion reminds one of that well-known hos-

pital bulletin: "The operation was a success, but the patient died."

The contract of June 11 bound the plaintiff to make certain payments as the work progressed. The surety had the right to expect that actual payments would be made. The contract gave the plaintiff no right to charge against the estimates due the contractor, debts incurred otherwise than under the contract. The surety had not guaranteed the payment of obligations not assumed under the contract. In making his collection from the estimate, the plaintiff imposed on the contract of June 11 obligations of the Construction Company incurred in former contracts. The contract of June 11 could not carry the added burden. This burden was not assumed by the Casualty Company, and was such an added risk as released it from liability.

We have not been cited, and have been unable to find, any decisions asserting the right of the property owner to divert money due the contractor where such diversion worked an injury on the surety, as was done in this case. The authorities are unanimous in holding that good faith is required of the owner toward the surety. The fact that the surety is a compensated surety does not change the rule. *Lonergan* v. *Trust Co.* (Texas) 11 L. R. A. N. S. 364. Any change in the contract made by the owner and the contractor, to which the surety is not a party and which works a material injury to the surety, discharges the surety. "Where the party secured does some act which changes the position of the surety to his injury or prejudice, the latter is no longer bound." *Smith* v. *Molleson* 148 N. Y. 241. So generally has this principle been applied that the Virginia Court in its opinion in *Womack* v. *Glasgow* 84 Va. 9, stated: "Accordingly, it has become almost axiomatic that whenever the principal debtor and the creditor enter into any agreement without the consent of the surety, which varies essentially the terms of the contract, or materially affects the rights and remedies of the surety, the surety is thereby released." Brandt Suretyship and Guaranty, par. 416; 21 R. C. L. 1000, par. 50.

By the great weight of authority, the failure of the plaintiff to retain 10 per cent. of the estimate of September 20,

would alone be sufficient under all the circumstances to re-
lease the surety. "The stipulations in a building contract,
that the owner will make payments as the work progresses,
in accordance with certificates of the architect, but will re-
tain a certain percentage of the amount earned, until the
work is completed, are by the weight of authority considered
to be covenants for the benefit of the surety, and a violation
of these stipulations by premature payments deemed a ma-
terial alteration of the contract, whereby the surety is re-
leased. The rule rests upon two reasons—the one is that such
a defense deprives the surety of the security which the owner
or principal contractor has agreed to hold for his benefit,
and the loss of the inducement which otherwise would have
operated on the contractor's mind, to induce him to finish
the work in accordance with the terms of the contract."
Stearns on Suretyship, 3 Ed., par. 76b. Pingree On Surety-
ship and Guaranty, 2 Ed., par. 112e; 21 R.C.L. 1013, par. 61;
and extensive annotation to *Lyons* v. *Kitchell* (18 N. Mex.)
Ann. Cases, 1925C, 671.

Plaintiff further contends that even if his conduct released
the surety, nevertheless Jennings Kincaid, the agent of the
Casualty Company, knew of plaintiff's conduct, the Casualty
Company acknowledged its liability to plaintiff after Kin-
caid had this information, and therefore waived its rights
to be discharged.

Kincaid was an agent of the Casualty Company, but with
limited authority. He was its attorney in fact to execute
bonds. He was empowered to write casualty insurance. The
only other authority which the record shows he had is stated
in a letter to plaintiff, of Oct. 20, directing plaintiff to ad-
vance to Kincaid enough money to meet necessary disburse-
ments to labor, and to accept vouchers and receipts from
Kincaid. The letter stated that Kincaid "is fully empowered
as our attorney in fact to take care of the details." Kincaid
admitted he had other authority, which was contained in a
certain letter from the Casualty Company. But that letter
was not produced and what that authority was, not proven.
He denied having the right to make settlements with owners
or contractors on behalf of the Casualty Company. He testi-

fied that he did not know the terms of the contract of June 11, and that he had never communicated to the Casualty Company his information as to plaintiff's conduct.   In asserting a waiver, the burden is on the plaintiff.   *Lumber Co.* v. *Friedman,* 64 W. Va. 151, Pt. 3, Syl.   Plaintiff has failed to carry that burden, and has not shown that Kincaid was such an agent of the Casualty Company, that notice to Kincaid was notice to his principal.   ''The rule that notice to an agent is notice to his principal is not applicable unless the notice has reference to business in which the agent is engaged under authority from the principal, and is pertinent to matters coming within that authority; and hence a principal is not affected with knowledge which the agent acquires while not acting in the course of his employment, or which relates to matters not within the scope of his authority, unless the agent actually communicates his information to the principal.''   2 C. J. 863, par. 544.

For the foregoing reasons the judgment of the circuit court against the Casualty Company will be reversed, the verdict of the jury against it set aside, and the case remanded.

*Judgment reversed; verdict set aside; case remanded.*