APPALACHIAN MARBLE COMPANY *v.* BOONE, EASON &
WOOD *et al.*

(No. 7626)

Submitted November 1, 1933.   Decided November 14, 1933.

*H. M. Barnett* and *Luther G. Scott,* for appellant.
*French, Easley, Easley & French,* for appellees.

HATCHER, JUDGE:

This is a suit by a furnisher of material to recover on a
contractor's bond for the default of a subcontractor.   The
plaintiff appealed from a judgment in its favor on the ground
that the recovery was not adequate.

Defendants Boone, Eason & Wood (hereinafter called the
contractors) constructed the Mercer County courthouse in
1930-1.   Defendant Fidelity & Deposit Company was surety
on their bond.   They sublet the marble, tile and terrazzo work
and the slate window stools to R. N. Vanderberry for $15,000,
without any bond from him to secure them, and with the fol-
lowing provision in the contract as to payments: "The
monthly payments on contracts in course of execution shall
be made within fifteen days after the submission of estimates
for payment and shall be based on 90% of the value of the
work set in place up to the date of the submission of the same,
plus 85% of the set value of all material delivered at the

building, whether installed or not. Final payment in full shall be made within thirty days from the completion and acceptance of the * * * work.''

Vanderberry purchased from the plaintiff the marble required at a total cost of $5,624.64. None of this amount was paid and the subcontractor has been adjudicated a bankrupt. There were two main shipments of marble, one on April 23, 1931, amounting to $2,500.00 and the other on May 7, 1931, amounting to $2,870.00. Small shipments for replacements were made in June and July of 1931, amounting to $254.64. There is no dispute as to any of these items.

On May 1, 1931, the contractors were allowed an estimate of $13,000.00 exclusively on the work of Vanderberry and were paid 85% of that estimate by the county. On that day they paid Vanderberry $3,000.00. On May 7th they mailed the plaintiff a letter which is in part as follows: ''We will be pleased to have you advise us the amount of your account and how you wish us to handle this in order that we may know that you are paid for this material.'' On that same day the plaintiff wired the architect in charge of the construction, ''Satisfactory with us to pay Vanderberry on estimates when due.'' The architect forthwith delivered the telegram to the contractors. Following which they made further payments to Vanderberry of $2,000.00 on May 8th, $2,500.000 on May 11th, and $1,000.00 on May 22nd. On May 24th they received from plaintiff a letter written on May 22nd, which charged its delay in answering the contractors' letter of May 7th to the dalliance of Vanderberry, notified the contractors of the shipments of April 23rd and May 7th, and requested them to protect its interest. The contractors also received from the architect on May 24th a copy of a letter to him from plaintiff directing him to disregard the telegram of May 7th. No further payments were made to Vanderberry after May 24th. On June 1st the architect made the contractors a further estimate of $4,000.00 on Vanderberry's work. He abandoned his contract the early part of June, and it was then completed by the contractors.

The contractors did not answer plaintiff until June 18th, when they wrote that Vanderberry's balance with them as of that date was approximately $5,500.00, subject to be re-

duced by "the payroll" and by some cement they had furnished him, and that they would hold the balance, etc. Some other letters were exchanged during the summer months of 1931, in which the plaintiff kept demanding that the balance due the subcontractor be paid to it, and the contractors kept postponing such payment, at first because plaintiff had not secured an order from Vanderberry for the balance, and later because the building was not yet completed. On September 15, 1931, the contractors notified plaintiff that the balance due Vanderberry then was $2,314.41, which they offered to pay to plaintiff, if it would guarantee them against any action of any of his creditors against them, and would also assign to them its claim against them and their surety arising out of the subcontractor's default. The tender was not accepted and plaintiff sued for its entire claim of $5,624.64. The circuit court found in its favor for the above balance of $2,314.41.

The law applicable to this case is well settled and it is mainly a problem in mathematics. There is no evidence on the correctness of the estimates of the architect or of the entire cost of the Vanderberry work. One would infer that the estimates were too liberal or that the work cost more than $15,000.00, the contract price. Be that as it may, the bond herein obligates the contractors and the surety (under Code 1923, ch. 75, sec. 12) to pay in full for all materials used in the construction of the courthouse, irrespective of loss to them through the default of a subcontractor. It makes no difference whether the materials are furnished to the principal contractors or to a subcontractor. *Hibner* v. *Ebersbach,* 110 W. Va. 177, 157 S. E. 178. However, a materialman may waive the security of the bond. Jones on Liens (3d Ed.), sec. 1500. The plaintiff did waive that security by its telegram of May 7th ("Satisfactory with us to pay Vanderberry on estimates when due"). But as the waiver was voluntary, it could be withdrawn if not to the legal prejudice of the contractors. The waiver was withdrawn on May 24th. Had the contractors paid over to Vanderberry before May 24th all the money due him under the estimate of May 1st, they would have been protected as to the marble included in that estimate. But they did not do that. Their account with Vanderberry, which they file, shows that up to May 24th they had

paid either to him or on his account only $8,739.32. Under their contract with him, at least 85% of the $13,000.00 awarded them on May 1st, or $11,050.00, was payable to him on May 15th. (The brief of the contractors concedes that this sum was then payable to Vanderberry.) Deduct from the sum payable the amount of the advances made to or for Vanderberry and the difference is $2,310.68. The contractors had no arbitrary right to retain this difference. But they did so and charged against it by June 1st, freight and express bills amounting to $79.30, leaving a difference on the original estimate of $2,231.38 then payable to Vanderberry. Of the $4,000.00 awarded in the estimate of June 1st, $2,000.00 (the balance due Vanderberry after subtracting $13,000.00, the allowance of May 1st, from $15,000.00, the entire contract price) should have been credited to Vanderberry and 85% of that sum, or $1,700.00, was payable to him on June 15th. Therefore, on that date, $2,231.38 undisposed of from the first estimate and $1,700.00 from the second estimate, or $3,931.38 in all, was payable to Vanderberry. The contract with him gave the contractors no right to retain this sum merely to insure the completion of the work. On the contrary, the contract required them to pay Vanderberry all of the monthly estimate except 15% *"within fifteen days after submission of estimates"*. Of course, this requirement did not preclude the contractors from retaining enough in addition to the 15% to protect themselves against the claims of Vanderberry's workmen and materialmen. *But no such claims are alleged or proved to have existed prior to June 15th,* except the claim of the plaintiff, with this qualification: the contractors' account against Vanderberry shows charges on June 13th of $30.00 paid to one W. G. Anderson and of $746.59 expended on a payroll. Those charges are not explained. It does not appear who Anderson was, or exactly when Vanderberry abandoned the work, or whether the payroll or any part of it was primarily chargeable to Vanderberry. The only defense advanced in the contractors' brief for their retention of money due Vanderberry is that "they certainly had the right so long as any question remained that any of his materialmen were not being paid to hold up sufficient to protect them." But the record discloses no materialman who

was not being paid except the plaintiff. Even the 15% properly retained, was set apart by law for the benefit of the surety, rather than for the protection of the contractors. See *Hamilton* v. *Casualty Co.*, 102 W. Va. 32, 38, 135 S. E. 259, and authorities there cited. Yet the contractors did use the retained 15%, amounting in all to $2,250.00 and $1,616.97 of the above $3,931.38 to complete the Vanderberry contract, thereby protecting themselves against a loss of $3,866.97 largely at the expense of plaintiff. In other words, on June 1st, the contractors had received allowances (May 1st and June 1st) for the work completed at that time by Vanderberry. The allowances included plaintiff's two major shipments of marble, amounting to $5,370.00, for which the contractors paid nothing. They were out nothing whatever at that time on the Vanderberry contract, and were liable on his account for nothing except the plaintiff's claim. They had in cash or available later to them Vanderberry's money to the amount of $6,181.39 ($2,250.00 and $3,931.38). The replacements of marble in June and July (amounting to $254.64) were made for the contractors themselves and are chargeable directly to them. So even if the payroll and the $30.00 (Anderson) charged to Vanderberry's account on June 13th were proper, there still remained in the hands of the contractors on June 15th $5,404.80 of Vanderberry's money which was more than sufficient to pay plaintiff for its two shipments to Vanderberry ($5,370.00). The telegram of May 7th has no significance whatever in relation to any of Vanderberry's money—not properly payable to another— which remained or which came into the contractors' hands after May 24th. No third party but plaintiff is shown to have been entitled to such money. Prejudice at law from the telegram is not proved to extend to any part of the $5,404.80. Therefore, the contractors were not entitled to refuse plaintiff payment (of the $5,370.00) from that sum. Yet, without paying plaintiff anything the contractors proceeded to apply as much as was necessary of the $5,404.80 to the completion of Vanderberry's job in order to make themselves whole.

This case does not call for a determination of which party is the more innocent in order to cast the loss on the other, as the brief of the contractors contends. The rule we must apply comes not from equity but from the statute. Under the

statute the contractors could not prefer themselves to a materialman. They could not escape loss at the expense of the plaintiff. Besides, we find no equity in favor of the plaintiff relating to the $5,404.80.

The mechanic's lien law, Code 1923, chapter 75, section 6, releases a building from the lien of a materialman if he fails to furnish the owner of the building an itemized statement of materials furnished within ten days after receiving a written request from the owner for such statement. We held in *Rhodes* v. *Riley*, 113 W. Va. 679, 169 S. E. 525, that a bond, such as was given by the contractors in this case, afforded a materialman no greater security than that of a mechanic's lien against a private structure. Therefore, the brief of the contractors contends that they are released from the demands of the plaintiff because of its failure to reply within ten days to their letter of May 7th. While the security of the materialman is the same under the bond of the contractor as under the mechanic's lien law, the procedure relating to the two liens is distinct. The statute does not include the materialmen on a public building within the ten-day requirement. As the procedure in these matters is purely statutory we cannot subject a materialman on a public building to a demand which the statute does not specify.

The brief calls attention to a letter from plaintiff to the contractors dated July 14, 1931, asking only for the balance due Vanderberry after the completion of the job. It seems from the correspondence that plaintiff was misinformed both as to the amount of the balance and as to its legal rights. The letter of July 14th was not received until after the job was virtually completed and its offer therein was never unequivocally accepted by the contractors. No prejudice to the contractors from the letter is pointed out in the brief, and we perceive none. We are therefore of opinion that the plaintiff is not estopped by the offer.

The decree of the circuit court is accordingly reversed and the cause remanded.

*Reversed and remanded.*