GEORGE F. TETRICK *v.* THORNTON F. McINTIRE *et al.*

(No. 6894)

Submitted May 19, 1931. Decided May 26, 1931.

530

*Strother & McDonald*, for appellant.

*P. M. Hoge, M. W. Ogden*, and *H. L. Ogden*, for appellees.

HATCHER, JUDGE:

Prior to October 16, 1920, defendant, Thornton F. McIntire, had become indebted to plaintiff, George F. Tetrick, in the sum of $2,028.64. On that date, a city lot was conveyed jointly to McIntire and his wife, defendant Laura B. On October 19, 1922, the McIntires executed a deed of trust on the undivided one-half interest of Thornton in the lot. This interest was sold and conveyed by the trustee to Laura B. on April 7, 1926. On April 10th, of the same year, the McIntires executed a deed of trust on the entire lot in favor of defendant Standard Building & Loan Association. This suit was brought to August Rules, 1927, and attacks these four conveyances as fraudulent, etc. The circuit court dismissed the bill.

1. The lot conveyed to the McIntires jointly in 1920 cost $10,000, of which Thornton paid $8,800 and his wife $1,200. Code 1923, chapter 74, section 2, after defining the word "transfer" to include a gift, provides as follows: "Every transfer or charge which is not upon consideration deemed valuable in law, shall be void as to creditors whose debts shall have been contracted at the time it was made." The statute makes lack of such a consideration conclusive, irrespective of the intent of the parties. *Mfg. Co.* v. *Carr*, 65 W. Va. 673. Laura B. testified that the consideration for her one-half interest in the lot in addition to the $1,200 in money, was a verbal promise by Thornton prior to their marriage in 1900, to compensate her for care and services to be rendered by her after marriage to his children by a former wife. Such promises are generally held to be against public policy and invalid.

"It would operate disastrously upon domestic life and breed discord and mischief if the wife could contract with her husband for the payment of services to be rendered for him in his home; if she could exact compensation for services, disagreeable or otherwise, rendered to members of his family; if she could sue him upon such contracts and establish

them upon the disputed and conflicting testimony of the members of the household. To allow such contracts would degrade the wife by making her a menial and a servant in the home where she should discharge marital duties in loving and devoted ministrations, and fraud upon creditors would be greatly facilitated, as the wife could frequently absorb all her husband's property in the payment of her services, rendered under such secret, unknown contracts.'' *Coleman* v. *Burr*, 93 N. Y. 17, 45 Am. Rep. 160, 163-4.

See also annotation 58 Am. St. Rep. 492; Peck on Domestic Relations, sec. 9; Long on Dom. Rel., (2nd Ed.), sec. 113; Schouler on Dom. Rel., (6th Ed.), sec. 543; 27 C. J., subject, Fraudulent Conveyances, sec. 265. The debt to plaintiff had been contracted at the time of this conveyance; consequently, the transfer to the wife of a greater interest in the lot than 12/100 was not upon a consideration deemed valuable at *law* and was void (under the statute) as to plaintiff.

2. The trust deed executed in 1922 recited that it was to secure Seymour McIntire in the payment of two promissory notes of $2,000 each and as endorser for Thornton on a note of $1,000 at the First National Bank of Shinnston. The proof shows that Thornton was unable to pay his debts in 1922; that Seymour was a cousin of Thornton; that while Seymour was an endorser for Thornton on the Shinnston note, Thornton did not owe Seymour any money at all personally; and that the execution of the two notes and of the trust deed (except so far as it secured Seymour as an endorser on the Shinnston note) was entirely a scheme to baffle Thornton's creditors. Therefore, the trust deed was void as to plaintiff. ''Every gift, conveyance, assignment, or transfer of or charge upon any estate * * * with intent to delay, hinder or defraud creditors * * * shall as to such creditors * * * be void.'' Code 1923, chapter 74, section 1. Had the instrument been given merely to secure Seymour as an endorser, it might have been legal; but Seymour's participation in the plan to hinder Thornton's creditors prevented any partial validity in his favor. The rule is stated in *Gregory* v. *Sitlington*, 54 Mo. App. 60 as follows: ''A conveyance made in bad faith by collusion between the debtor and creditor to cover up property by professing to secure an indebtedness

not really existing is void as to creditors, and that it secures a real debt, will not save it.'' Accord: *Levy* v. *Hamilton*, 74 N. Y. S. 159; *M'Kee* v. *Gilchrist*, 3 Watts, (Pa.) 230; *McMahon* v. *Pithan*, 166 Iowa 498; *Holt* v. *Creamer*, 34 N. J. Eq. 181; 27 C. J., *supra*, sec. 104.

3. Seymour directed the trustee (in the 1922 trust deed) to sell Thornton's one-half interest in the lot in 1926, at which sale Seymour bid in the property on behalf of Laura B. to whom the trustee executed a deed which recited a cash consideration of $3,800. The proof shows that Laura B. made no payment whatsoever either to the trustee or to Seymour, although she did pay off the Shinnston note amounting to $1,060.95. This conveyance to Laura B. was but the culmination of the fraudulent scheme set on foot by the McIntires in 1922 and is also void as to plaintiff. However, Laura B. did acquire in this transaction (by subrogation) such rights against Thornton as were held by the Shinnston bank.

4. The payment of the Shinnston note was made from $2,000 borrowed by Laura B. of the Loan Association, to secure which the second deed of trust was executed. This loan was made by the Association in good faith and without notice of the fradulent scheme of the McIntires and the deed of trust will be upheld.

The brief of appellees contends that the plaintiff has lost his right to assail these conveyances through his delay in bringing suit. It is settled law, however, that delay alone does not constitute laches; it is delay which places another at a disadvantage. *Carter* v. *Carter*, 107 W. Va. 394. Seymour McIntire died pending this litigation; but the appellees are not placed at a disadvantage by the loss of his evidence or for any other reason arising from delay, as the fraudulent scheme is fully established by the admissions of Thornton and Laura B.

The brief also contends that the plaintiff failed to exercise diligence to realize on some coal stock furnished him as collateral security by Thornton. This stock was placed in plaintiff's hands in 1922, but was not sold until 1926 when it had materially depreciated in value. The proceeds were properly

applied to Thornton's indebtedness. He did not call on the plaintiff to sell the stock and offered no evidence whatsoever that the plaintiff was negligent or had acted in bad faith. Consequently, the contention fails. 21 R. C. L., page 664, sec. 27.

The brief further contends that the plaintiff acquiesced in the fraudulent scheme of the McIntires and does not come into equity with clean hands. This contention is based on the testimony of plaintiff that from six to eight months before this suit was brought, Thornton admitted the scheme to him while disclaiming any intention of defrauding him, personally. As the entire scheme had been completed before the plaintiff received this information and as the suit was brought within a reasonable time thereafter, the contention of acquiescence is also groundless.

The decree of the circuit court is accordingly reversed and the cause remanded.

*Reversed and remanded.*