John H. Hoffman, Receiver of Wheeling
Savings & Loan Association

***v.***

Wheeling Savings & Loan Association
*et al.* and Stephen J. Russek, *et al.*

*and*

Bessie Loe, *et al.*

*v.*

O. H. Gall, Receiver for Wheeling
Savings & Loan Association

(No. 10190)

Submitted January 17, 1950. Decided February 21, 1950.

GIVEN, JUDGE, not participating.

*McGinley, Paull & Petroplus,* for appellants.

*A. E. Bryant,* for appellee. *John H. Hoffman,* receiver of Wheeling Savings & Loan Ass'n.

*Handlan, Garden, Matthews & Hess,* as amicus curiae.

FOX, JUDGE:

Stephen J. Russek, assignee of Anna Russek, and Chester M. Dawson, administrator of the estate of Anna Russek, deceased, complain of a decree of the Circuit Court of Ohio County, entered on the 10th day of June, 1949, in the chancery cause of John H. Hoffman, Receiver of Wheeling Savings & Loan Association, a corporation, against Wheeling Savings & Loan Association, a corporation, and others, and Bessie Loe, et al., against O. H. Gall, Receiver of Wheeling Savings & Loan Association, a corporation, whereby appellants were denied the priority to which persons holding certificates of indebtedness against the said Loan Association were entitled, as to the sum of $4,706.18, an amount decreed to Stephen J. Russek, in the priority given what is termed in the case as installment share accounts, which, in effect, held the said Rus-

sek to be a stockholder whose claim was subordinate to creditors of the Loan Association.

Mike Russek and Anna Russek, husband and wife, were Czech immigrants to this country. Anna Russek was not able to read or write the English language. They loaned to the Wheeling Savings & Loan Association, hereinafter referred to as Loan Association, sums of money at various times, and as evidence of indebtedness received what is termed certificates of indebtedness. It is not definitely shown in the record when these loan transactions began, but on January 7, 1933, there was issued to Mike Russek and Anna Russek loan certificate No. 3505 in the sum of $2,500.00, which, excluding dates and signatures, reads:

> "This is to certify that Mike and Anna Russek has loaned to the Wheeling Savings and Loan Association, the sum of——Own Your Home——2,500 Dol's. 00 Cts. Dollars ($2500.00) to be repaid to said creditor, with interest at 6 per cent per annum, from the date hereof, payable semi-annually, 12 months from and after the date he gives said Association notice of his intention to withdraw the same, upon surrender of this certificate, duly endorsed."

On January 16, 1933, a like certificate, No. 3512, for $2,-650.00, was issued to the same parties; and on March 1, 1933, a like certificate, No. 3543, for $2,300.00 was issued to the same parties. The first certificate mentioned bears interest at the rate of six per cent, and the second and third certificates bear interest at the rate of five per cent per annum.

As shown by a pass book, introduced in evidence, and proof of claim thereon, hereinafter mentioned, it appears that on July 25, 1933, Anna Russek presented to the Loan Association certificate No. 3512, aforesaid, for the sum of $2,650.00. Although it does not clearly appear from the evidence, it seems probable that said certificate was presented in order to collect accrued interest and for reissue. The certificate was presented to an employee of the Loan Association, who, over the objection of Anna Russek,

retained the same, and in lieu thereof delivered to the said Anna Russek in her name and that of her husband, Mike Russek, pass book No. 8393, on which the Russeks were credited with the sum of $2,650.00. The evidence discloses that Anna Russek made violent objections to this action at the time, and even made an effort to take physical possession of the certificate. by going behind the counter in the office of the Loan Association. The fact that she did make serious objection to the retention of her certificate, and the substitute therefor of the pass book account, is clearly shown by the testimony of Stephen J. Russek, that the employee of the Loan Association who participated in this illegal transaction admitted to him that the change in the status of the loan was made over the objection of Anna Russek, and there is no denial by that employee of Russek's testimony. We conclude, therefore, that it is established beyond question that the change was made without the consent, and over the serious objection of Anna Russek. This is also shown by Russek's testimony as to his conversation with one Joseph H. Reass, at that time the executive head of the Loan Association hereafter referred to, and likewise not denied.

At the time of these conversations with the employee of the Loan Association, and with the executive head thereof, it seemed to have been the understanding of the parties concerned that certificate No. 3505 for $2,500.00 was surrendered in July, 1933; but the record shows that, in fact, that certificate was not delivered to the Loan Association until January 2, 1934, and there is no evidence indicating that the surrender of this certificate was anything other than voluntary on the part of Anna Russek. The amount of this certificate was entered on the same pass book, No. 8393, as a credit of $2,500.00. On July 25, 1933, Anna Russek was supplied with two cards for the signature of herself and Mike Russek each reading as follows:

"I hereby subscribe for _____ shares of installment stock and assent to the By-Laws, Rules and Regulations of the Wheeling Savings & Loan As-

sociation, and any and all amendments of said By-Laws, Rules and Regulations, and agree to be bound thereby. And in consideration of dividend, payable semi-annually, waive all claim for participation in any increased earnings and surrender my voting right to duly appointed representatives of this Association. I understand that State law shall govern withdrawals."

Neither of said cards was ever signed by either Anna Russek or Mike Russek, the names of the parties in which the pass book No. 8393 was issued, which number appears at the top of each of said cards. There is another card in the record on which the names of Miss Rose Russek and Anna Russek appear which reads:

"I hereby subscribe for _____ shares of installment stock and assent to the By-Laws, Rules and Regulations of the Wheeling Savings & Loan Association, 25 Eleventh Street, Wheeling, W. Va., and any and all amendments of said By-Laws, Rules, and Regulations, and agree to be bound thereby."

This card is numbered 4610, and there is nothing to indicate the date when issued, and this card is not accounted for as having any connection with the certificates upon which appellants' claim is based.

Subsequent to the issuance of pass book No. 8393, aforesaid, the pass book account was credited with dividends to the amount of $81.90, and charged with withdrawals in the amount of $525.72, thereby reducing the amount due on the installment stock account, entered on said pass book, and originally represented by certificates of indebtedness, to the sum of $4,706.18. It appears from the evidence that some of these withdrawals were permitted by reason of illness in the family of the Russeks. One withdrawal of $150.00 was made on January 17, 1934, and the others later, two being in the fall of 1934, and one in January, 1935.

The form of the certificates of indebtedness issued, and the card which the pass book holders were required to sign, disclose that certificates of indebtedness were in-

tended to represent money borrowed by the Loan Association; while money deposited and credited on the pass book merely constituted the owner of such book a stockholder in the Loan Association; and it is conceded that the legal status of a pass book depositor was subordinate to that of a certificate of indebtedness holder. This litigation grows out of the fact that there is in the hands of the plaintiff, receiver of the Loan Association, a sum of money which will pay in part certificates of indebtedness; but there is not sufficient funds in his hands to pay anything on pass book deposit accounts.

Neither Anna Russek or Mike Russek made any statement with respect to their experience with the Loan Association until sometime between early August of 1934, and January 1 of the following year. At some time within that period, Anna Russek informed her son, Stephen J. Russek, one of the appellants herein, of her experience when she presented her certificate on July 25, 1933, more than a year before. Apparently, Stephen J. Russek understood that certificates Nos. 3505 and 3512 had been presented at the same time, namely, on July 25, 1933. At any rate very soon after he received this information from his mother he went to the office of the Loan Association and demanded the return of the two certificates. He went there for the purpose of interviewing Joseph H. Reass, executive head of the Loan Association, but Reass not being in the office on that date, he discussed the matter with an employee whose name was then Bunney, but who afterwards married one Corell, and who is mentioned in the record as Miss Bunney and Mrs. Corell, and admittedly these names refer to the same person. Russek's testimony, as to what occurred between him and Miss Bunney on that occasion is as follows:

> "I requested the return of those certificates. However, she told me very apologetically that she could not return them; that it would be necessary for me to see Mr. Reass. She also said Mr. Reass, who was in Pittsburgh that day, would be back in the office the following day and she was certain if I made an issue of it, Mr. Reass would re-

turn the certificates to me, or better still, if he was successful in negotiating a loan he was attempting to negotiate in Pittsburgh I could secure the money, if that was what I wanted."

His further testimony is that Miss Bunney told him that, in retaining the certificates, she was merely following the orders of Reass. Russek's testimony is that on the following day he returned to the Loan Association office, and after waiting for some time finally interviewed Reass, the result of which was that there was a promise to return the certificates which, according to Reass, could not be found on that day. This interview seems to have been somewhat heated on both sides. The certificates were never returned to Anna or Mike Russek or to their representative, Stephen J. Russek.

The record is rather vague as to what occurred subsequent to this interview between Stephen J. Russek and Joseph H. Reass, executive head of the Loan Association, other than that efforts were made to contact Reass by Anna Russek and Stephen J. Russek without success. Apparently there was a change in the set-up of the Loan Association in 1935, and other people succeeded Reass in the management thereof. What, if anything, the Russeks did towards urging this claim for the return of their certificates, the evidence does not disclose. On January 4, 1936, the Loan Association was closed by the State Commissioner of Banking, and O. H. Gall was named as its receiver, who served as such until May 1, 1943, when John H. Hoffman, the plaintiff herein, was named as receiver, in succession to the said Gall, and who later instituted this suit.

During the incumbency of O. H. Gall, as receiver for the Loan Association, an effort was made to realize on the assets of the Loan Association, and persons having claims against it were notified to present them with proof. Mike Russek died on January 7, 1942, and by his will devised and bequeathed all of his property to his wife Anna. On January 15, 1942, Anna Russek filed proof of her claims against the Loan Association, and as proof thereof filed

her pass book No. 8393, showing that there was due her thereon the sum of $4,706.18. She also filed certificate No. 3543 issued to her on March 1, 1933, in the sum of $2,300.00. On January 15, 1942, Anna Russek assigned both claims to her son, Stephen J. Russek, one of the appellants herein. Anna Russek died April 4, 1944, and on April 11, following, Chester M. Dawson was named as the administrator of her personal estate. So far as the record discloses, nothing was done by either Stephen J. Russek, as assignee, or by Chester M. Dawson, as administrator, towards asserting the claim they now assert with respect to the certificates of indebtedness allegedly unlawfully appropriated by the Loan Association, until after the institution of this suit.

This suit was instituted on April 19, 1945. It does not appear to be necessary to go into detail as to the purposes of the suit, except to say that it was for general settlement of the receiverships, and to that end there was and is required an adjudication of the claims of certain parties, including that of Stephen J. Russek, as assignee of Anna Russek. Previous to the institution of this suit, Bessie Loe and others had instituted a suit to enforce claims based on alleged certificates of deposit which involved, to some extent, but not entirely, questions raised in respect to the Russek claim, and these parties were brought into the suit by order of consolidation, and their claims have been adjudicated herein.

On November 26, 1945, Stephen J. Russek filed his answer to plaintiff's bill in which he sets up the alleged illegal conduct of the Loan Association in respect to depriving his assignor of the benefit of the two certificates of deposit hereinabove referred to, and the pretended transfer thereof to a pass book or installment stock account. On January 11, 1946, the two causes were referred to a commissioner in chancery for various purposes, including a report on the claim of Stephen J. Russek, as set up in his answer. Testimony was taken before the commissioner touching the Russek claim, and about January, 1948, the commissioner filed his report in which

he denied to Russek his claim of $4,706.18 as a certificate of indebtedness creditor. Exceptions were filed by Russek to this report on February 7, 1948, and the cause submitted to the Circuit Court of Ohio County on that report.

On August 6, 1948, the said court filed an opinion in which it dealt at some length with questions raised in the case affecting other creditors, but did not pass upon the Russek claim. In that opinion the court said:

> "It is with considerable regret that the court finds itself unable to consider the Russek claim at this time. Anna Russek filed proof of claim as an instalment stockholder and she assigned this claim and no other to the present claimant. What the situation is in regard to Anna Russek's estate is not known. It will be understood that no decision whatsoever is made on the points involved in that claim other than the one here mentioned and that counsel will, between now and the next time of hearing, consider what, if any, steps may be taken in regard thereto."

Following this opinion, and on November 4, 1948, Chester M. Dawson, administrator of the personal estate of Anna Russek, deceased, filed his petition in the case in which he sets up the same claim with respect to the three certificates of indebtedness, Nos. 3505, 3512 and 3543, hereinbefore referred to, as that set up by Stephen J. Russek, as assignee of Anna Russek, and prays in said petition that he be permitted, as the personal representative of Anna Russek, to intervene in the suit as a party defendant, and to join the answer theretofore filed by Stephen J. Russek for the purpose of fully and completely prosecuting the claims based on the said certificate once owned by Anna Russek. He was permitted to file his petition and was admitted as a defendant. To this petition, plaintiff tendered and filed his demurrer on grounds which will be hereafter referred to. On April 1, 1949, the trial court filed its final opinion in the case. We can do no better than to quote this opinion as to the Russek claim, which opinion was carried into the final decree of June 10, 1949, from which this appeal has been taken. The court said:

"As to the Russek claims, it is once more necessary to express regret. An examination of the record in this case clearly discloses that the exchange of the second certificate is not supported by any evidence of fraud or duress. It is perfectly true that we may suspect an abundance of either and that it is quite possible—even likely—that they were present; but they are not proved. However, this is not the real difficulty.

"That difficulty is the fact that Anna Russek died without repudiating these transactions, as far as the matter of claim was concerned. It is perfectly true that she sought to repudiate them but never succeeded in having them set aside. She filed a claim as holder of instalment stock. It is felt and felt keenly that no court has a right to presume that a deceased person would have repudiated a contract had he lived when every later act of that deceased person tends to confirm it. The result of this is that what was probably the most high-handed procedure used in regard to any of these claims turns out to be the only one successful. It is unfortunate but, as the commissioner points out, the whole thing is unfortunate and all of these people deserve sympathy."

Six grounds were assigned in support of the demurrer of the plaintiff to the petition of Chester M. Dawson, administrator aforesaid. The first two allege that the petition of said administrator did not show that Anna Russek died possessed of any claim against the Wheeling Savings & Loan Association, by reason of the fact that more than two years before her death, and subsequent to the death of Mike Russek, had assigned her claim against the said Loan Association to Stephen J. Russek. The third and fourth grounds of demurrer raise the question of the statute of limitation and laches, on the part of Anna Russek, in failing to assert the claim now advanced by her assignee and administrator. The fifth ground is that the assignment made by Anna Russek to Stephen J. Russek did not assign any right of action based upon said fraud, deceit and duress. And the sixth ground is that the said administrator comes too late for the assertion of a new claim after the time fixed for proof of claims, and

that his petition was not a mere formal amendment of a claim duly filed.

The final decree of June 10, 1949, states that the demurrer of the plaintiff to the petition of Chester M. Dawson, administrator, was sustained. The decree then overrules the exceptions to the report of the commissioner in chancery and decrees:

"\* \* \* that the said Chester M. Dawson, Administrator of the Estate of Anna Russek does not in his petition set forth any right to intervene in these causes and to assert any claim against the Receiver of said Wheeling Savings & Loan Association, and that the petition of said Chester M. Dawson, Administrator as aforesaid, should be dismissed; \* \* \*."

The court then entered the following decree:

"\* \* \* and it is accordingly adjudged, ordered and decreed that the said Stephen J. Russek, Assignee of Anna Russek and Michael Russek is the owner of one certificate of Indebtedness No. 3543 of Wheeling Savings & Loan Association, amounting with interest to January 6, 1936, the date of the appointment of the Receiver for said Association, to $2,569.29 and shall be entitled to his pro rata dividend as the holder of an indebtedness claim of that amount, and that he is the owner of an instalment share stock account in the amount of $4,706.18 evidenced by Instalment Share Account Pass Book No. 8393, and will be entitled to receive his pro rata dividend on such stock account, if any dividend is payable on claims of that class; and it is further adjudged, ordered and decreed that said Stephen J. Russek is not the owner of certificates of indebtedness No. 3505 and No. 3512 in the aggregate amount of $4,706.18, as is claimed in his answer filed in the first of these causes, and his claim that he is the owner of such certificates of indebtedness in the aggregate amount of $4,706.18 is hereby dismissed: and that the petition of said Chester M. Dawson, Administrator of the Estate of Anna Russek, be and the same hereby is, dismissed."

It is clear from the record before us that a gross fraud was perpetrated by the Loan Association on Anna Russek

and Mike Russek when certificates of indebtedness numbers 3505 and 3512 were, in effect, confiscated by the action of the Loan Association in July, 1933, and in January, 1934. The two Russeks had deposited their savings with the Loan Association, and received a contract in writing which constituted them its creditors. They were issued certificates of indebtedness for the sums so loaned, the form of which has been set out in this opinion. Under certain conditions, they were entitled to the payment of the said certificates of indebtedness, and, of course, they might elect to renew the same. In July, 1933, when certificate number 3512, in the sum of $2,650.00, was presented, an employee in charge of the Loan Assocation office, acting under the instructions of the principal executive thereof, arbitrarily refused to accord to the Russeks the rights which they possessed at that time, either to require payment of the certificate in cash, or to renew the same; but, instead, withheld the possession of the certificate, and in lieu thereof made out pass book No. 8393, on which the amount of the said certificate was entered as a credit, and which was intended to, and, if permitted to stand, did constitute the Russeks installment shareholders which, in legal effect, made their deposit subordinate to the claims of those holding certificates of indebtedness. There can be no possible defense to this arbitrary action on the part of the Loan Association. In the language of the trial court in its opinion, filed April 1, 1949, this action "was probably the most high-handed procedure used in regard to any of these claims.", and no one will contend that this was an overstatement. It is true that there is nothing in the record showing that when certificate number 3505, in the sum of $2,500.00, was presented in January, 1934, and given like treatment, there was any specific protest on the part of the holders of the certificate. Of course, this raises difficulties; but the Russeks had once made their protest, and, in the circumstances, it does not appear to us that a second protest was necessarily required. In connection with these transactions, it is important to note that to constitute one an installment shareholder, by pass book deposit, the rules of the Loan Association apparently re-

quired that the depositor sign a card, the form of which has been set out in this opinion. Two of these cards, bearing the pass book number 8393, were furnished the depositors for their signatures, but were never signed, which supports the theory that the Russeks did not intend to become shareholders; otherwise they would have signed these cards. All this indicates that the Russeks never at any time willingly became shareholders in the Loan Association.

If Anna Russek, or her assignee or administrator, are to be deprived of the benefit of the original contract between Mike Russek and Anna Russek and the Loan Association, whereby they became its certificate of indebtedness creditors, it must be on some ground other than transactions in conformity with the rules of the Loan Association. There has never been at any time any positive action, on the part of the two Russeks, to whom the certificates of indebtedness were issued, indicating that they were willing to exchange their certificates for an installment share account.

In this situation, this Court is reluctant to give force and effect to a fraudulent act by which a depositor is deprived of the rights acquired by him when he made a deposit of money in a bank. We do not mean to say that he may not, through laches or waiver, be held to have lost the rights he originally possessed; but in a case of gross fraud, such as is disclosed by this record, any character of waiver, or the application of the doctrine of laches, will not be recognized except in cases where the evidence of such waiver or laches is perfectly clear.

The defense to the claim set up in these causes by Stephen J. Russek, as assignee, and by the administrator of the estate of Anna Russek, is based upon two grounds. First, laches; and second, waiver, on the part of Anna Russek, of her claim as a certificate of indebtedness creditor growing out of her conduct and action heretofore discussed when the two certificates of indebtedness involved were, we think, illegally appropriated by the arbitrary

action of the Loan Association. We will discuss these two defenses in the order named.

The doctrine of laches, when applied to what is sometimes termed a stale demand, has been known in courts of equity from the earliest days in the development of equity jurisprudence in England. "A court of equity," said Lord Camden, "has always refused its aid to stale demands, where the party slept upon his rights, and acquiesced for a great length of time * * *; and therefore, from the beginning of this jurisdiction, there was always a limitation to suits in this court." 19 Am. Jur. 339. A defense of laches may not be invoked in a law action, and there is little, if any, connection between laches and statutes of limitation of actions. Modern decisions have somewhat changed the original theory of laches, and time alone is not now considered a controlling factor in the application of the doctrine. It has been defined as such neglect as leads to a presumption that the party has abandoned his claim and declines to assert his right.

> "It is delay in the enforcement of one's rights as works a disadvantage to another; or, such delay without regard to the effect it may have upon another as will warrant the presumption that the party has waived his right."

6 Digest, Va. & W. Va. 602. *Mitchell* v. *Cornell,* 88 W. Va. 194, 106 S. E. 866; *Allen* v. *LaFollette,* 94 W. Va. 700, 711, 120 S. E. 176. "Delay alone does not constitute laches; it is delay which places another at a disadvantage." *Camden* v. *The Fink Coal & Coke Company,* 106 W. Va. 312, 145 S. E. 575; *Carter* v. *Carter,* 107 W. Va. 394, 148 S. E. 378; *Currence* v. *Ralphsnyder,* 108 W. Va. 194, 151 S. E. 700; *Tetrick* v. *McIntire,* 110 W. Va. 529, 158 S. E. 788; *Chitwood* v. *Collins,* 122 W. Va. 267, 8 S. E. (2d) 830. Recent cases decided by this Court plainly state the rule that mere lapse of time, not resulting in prejudice to another, does not furnish grounds for the application of the doctrine of laches. The following cases will illustrate this principle: *Williams* v. *Croft Hat & Notion Co.,* 82 W. Va. 549, 96 S. E. 929; *Bank* v. *McLaughlin,* 121 W. Va. 41, 1 S. E. (2d) 251;

*Bankers Coal Co.* v. *Monarch Coal Co.*, 123 W. Va. 53, 14 S. E. (2d) 922; *Allen* v. *Allen,* 126 W. Va. 415, 28 S. E. (2d) 829; *Pownall* v. *Cearfoss,* 129 W. Va. 487, 40 S. E. (2d) 886.

The basis of appellees claim that appellants are barred by laches rests primarily on the failure of Anna Russek in her lifetime, and her assignee and administrator after her death, to prosecute any claim for relief on account of the alleged fraud which deprived her of the benefit of certificates of indebtedness involved in this case. When we analyze this claim, we find no basis on which we can apply the doctrine of laches. Anna Russek who seems to have taken the lead in the dealings with the Loan Association, in respect to the certificates of indebtedness here involved, made her first protest against the action of the Loan Association in July, 1933, and that protest was a vigorous one, not only by positive act, but by failure to sign the card which was then apparently delivered to her for signatures. The next certificate was surrendered in January, 1934, and, as stated, the record does not disclose that any protest was made, but the card tendered to her for signatures was never signed. It is clear from the testimony that Anna Russek, an immigrant who could neither read or write the English language, stands in a different position from that of an alert business man or woman who would be charged with knowledge of the consequence of the arbitrary action of the Loan Association in respect to these certificates. For some reason, Anna Russek seems to have been reluctant to acquaint anyone with her difficulties, and it is in evidence that she placed implicit confidence in the one man who, from this record, appears to have been the source of all her difficulties, and that was Reass, the executive manager of the Loan Association. Finally, sometime after August, 1934, at least eight months after the last transaction, in January, 1934, Anna Russek did take her son, Stephen J. Russek, into her confidence. Protest was immediately made, and Stephen J. Russek learned what had actually occurred, through a statement made to him by the employee of the Loan Association who had personally conducted the transactions out of which

this litigation arose. Following this conversation, Stephen J. Russek took up the matter with the executive official, Reass, who promised to restore the certificates to their rightful owners; but under the pretense that they could not be found, their restoration was delayed and thereafter none of the Russeks were able to contact Reass, and the certificates were never restored to their owners. They appear to have been at all times in the possession of the Loan Association and were produced and filed in these causes. How long Reass remained with the Loan Association is not known, but there was a reorganization between the date of his conversation with Stephen J. Russek, and the date when the Loan Association was closed by the State Banking Commissioner as an insolvent institution, on January 4, 1936. It is clear, therefore, that something more than a year passed without any definite action on the part of the Russeks to test the legality of the action of the Loan Association in depriving Anna Russek and Mike Russek of the benefit of the two certificates of indebtedness. In some circumstances this delay might furnish grounds for the application of the doctrine of laches, but we do not think it sufficient in this case. There is no indication in the record that anyone other than the Russeks was prejudiced by this delay. The record indicates that during this period the practice of issuing new certificates of indebtedness had been discontinued; but even if this practice had not been discontinued, there is nothing to indicate that anyone other than the parties actively participating in these transactions knew anything about the dispute between the Russeks and the Loan Association, or made or continued deposits with such knowledge. During this period of something more than a year, payments were made by the Loan Association to the Russeks reducing the pass book account from $5,150.00, represented by the two certificates, to $4,706.18. Treating the Russeks as mere installment stockholders, we assume that they had no right to make any withdrawals other than dividends. When we go to the account, as shown by pass book No. 8393, we find that the dividends accruing during the period aforesaid amounted to $81.90, whereas the withdrawals were $525.72,

only $6.62 of which corresponded to any dividend item. Apparently, therefore, it was recognized by both the Loan Association and the Russeks that the matter had not been settled, and that the Russeks still claimed the right to withdraw funds on deposit, a right they would have had had they retained their certificates of indebtedness. It should be borne in mind that by becoming an installment shareholder, the right of withdrawals was, apparently, surrendered, and, therefore, permission to withdraw, as indicated on the account aforesaid, does not conform with the contention that the Russeks ever became, in legal effect, installment shareholders in the Loan Association.

We are of the clear opinion that the case does not present the situation for the doctrine of laches by reason of the failure to prosecute the claim involved prior to the declared insolvency of the Loan Association in January, 1936. From that date on, the affairs of the Loan Association were in the hands of its receiver for the benefit of all of the creditors and stockholders, and the assets of the Loan Association constituted a trust fund to be realized upon and distributed in accordance with the rights of the parties as they existed at the time the institution was closed. This being true, there could have been no laches in the presentation of the claim. Creditors had a right to rest their claims upon the situation as it existed at the time of the closing of the Loan Association; and when the plaintiff instituted the first of these suits for the general settlement of the trust, Stephen J. Russek, as the assignee of Anna Russek, had the right to file an answer to the plaintiff's bill and assert his claim subject, of course, to whatever might be asserted against it on account of alleged waiver or laches prior to January, 1936. There being some question as to whether the assignment made by Anna Russek to Stephen J. Russek did more than assign the $2,300.00 certificate of indebtedness, and the pass book account, it was proper, in order to bring all interested parties before the court, to permit the filing of the intervening petition by the administrator of the personal estate of Anna Russek, and in sustaining the demurrer thereto,

and dismissing the same, the trial chancellor committed error.

The remaining question is one involving alleged waiver, on the part of Anna Russek and Mike Russek, of their right to insist upon having their certificates of indebtedness restored to them, less the amounts admittedly paid thereon, subsequent to the dates when such certificates were attempted to be transferred by the Loan Association to the installment stock account represented by pass book No. 8393. The theory of waiver appears to have been adopted by the trial court, although it does not use that term. The court said, speaking of the difficulties in the way of sustaining the Russeks' claim:

> "That difficulty is the fact that Anna Russek died without repudiating these transactions, as far as the matter of claim was concerned. It is perfectly true that she sought to repudiate them but never succeeded in having them set aside. She filed a claim as holder of instalment stock. It is felt and felt keenly that no court has a right to presume that a deceased person would have repudiated a contract had he lived when every later act of that deceased person tends to confirm it."

We are unable to follow the learned trial judge in this conclusion. We think Anna Russek did everything she could do to repudiate the transaction which deprived her of her certificates of indebtedness. She protested at the time the first certificate was taken from her, and, we think, the second one was taken from her in the same arbitrary fashion, and without her consent. After some delay, which prejudiced no one other than herself, she communicated the wrong that had been done her to her son who promptly protested. That, it seems to us, amounts to repudiation. Of course, she could have made her repudiation more effective by instituting a suit to enforce the return of her certificates; but unless her failure to do so prejudiced someone, we do not think the failure to institute such suit in anywise affected her attempted repudiation of these transactions. There is a difference between repudiation

of a transaction by one party, and the wiping out of that transaction by cancellation or otherwise. The fraud that was done these people could not be undone except by restoration of the rights of which they had been deprived by wrongful and fraudulent acts; and that required action on the part of the Loan Association.

We do not think that Anna Russek ever did a positive act tending to confirm or accept the result of the fraudulent action of the Loan Association. With the exception of the transaction of January, 1934, as to which there is no proof, the record shows that she was always protesting. The filing of the pass book to establish the amount due her should not be treated as an acceptance of the status assigned her by the fraudulent act of the Loan Association; but merely as furnishing the only proof she had that the Loan Association owed her anything. She had been theretofore deprived of her certificates of indebtedness. The only thing she had showing any indebtedness of the Loan Association to her was the certificate of $2,300.00, and pass book No. 8393. She should not be condemned because she used the last vestige of proof she had to establish a claim against the Loan Association. Whether the assignment to Stephen J. Russek passed anything more than the pass book account, and the $2,300.00 certificate, is a question not necessarily before us, and is one in which only Stephen J. Russek, and the administrator of his mother's estate, are interested.

We have heretofore adverted to the fraudulent nature of this transaction on the part of the Loan Association, and the discussion on that point, in connection with the theory of laches, may be used with equal force on the theory of waiver. A waiver of any right has been defined as the voluntary, intentional relinquishment of a known right.

> "The essential elements of a waiver, within the definitions already given, are the existence, at the time of the alleged waiver, of a right, advantage, or benefit, the knowledge, actual or constructive, of the existence thereof, and an inten-

tion to relinquish such right, advantage, or benefit. Voluntary choice is of the very essence of waiver. It is a voluntary act which implies a choice by the party to dispense with something of value, or to forego some advantage which he might at his option have demanded and insisted on."

56 Am. Jur. 113. There must be first, the existence of the right; second, knowledge of the existence of such right; and third, voluntary intention to relinquish. The burden of proof to establish waiver is on the party claiming the benefit of such waiver, and is never presumed. *Hamilton* v. *Republic Casualty Co.,* 102 W. Va. 32, 135 S. E. 259.

"A waiver of legal rights will not be implied except upon clear and unmistakable proof of an intention to waive such rights. * * *"

*Security Loan and Trust* v. *Fields,* 110 Va. 827, 67 S. E. 342. In *Blue* v. *Hazel-Atlas Glass Company,* 106 W. Va. 642, 147 S. E. 22, it is stated in the body of the opinion:

"Of course a waiver may be express or it may be inferred from actions or conduct, but all the attendant facts, taken together, must amount to an intentional relinquishment of a known right, in order that a waiver may exist."

See also *Dye* v. *Pennsylvania Casualty Co.,* 128 W. Va. 112, 35 S. E. (2d) 865; *Smith* v. *Bell,* 129 W. Va. 749, 41 S. E. (2d) 695.

Some of the authorities indicate that a waiver, as well as a laches, must be of such character as to indicate intention to abandon a claim. We do not think this record discloses that Anna Russek or Mike Russek ever intended to abandon a claim of right under the certificates of deposit issued to them. We think the application for the withdrawal of part of the funds represented by the two certificates attempted to be transferred to the pass book, in itself, amounted to the continued assertion of a right such as they would have had had their certificates not

been taken away from them. This, with the protest lodged sometime in the fall of 1934, by Stephen J. Russek, as the emissary of his mother, likewise shows that she had not at that time abandoned her claim that she had been wronged in these transactions. Whatever the technical difficulties which the action of this untutored woman of foreign birth may have created, we think they are overcome by broad principles of justice which prevail in courts of equity, and which will not permit the enforcement in such a court of transactions of the character pictured in this record. We are of the opinion that there was no waiver on the part of Mike Russek or Anna Russek of the rights now contended for by the assignee and administrator of Anna Russek.

We find no difficulty in respect to the question of the receiver of the Loan Association holding the funds in his hands as such, as a trust for the benefit of the creditors and stockholders of the Loan Association according to their rights. The fund in his hands should be distributed according to the decree entered by the Circuit Court of Ohio County, except that the claim of $4,706.18 decreed to Stephen J. Russek, as assignee of Anna Russek as an installment share account, should be decreed to Stephen J. Russek and the administrator of the estate of Anna Russek jointly as their interest may appear, and as certificates of indebtedness creditors of the Loan Association.

It follows that the decree of the Circuit Court of Ohio County, entered on the 10th day of June, 1949, will be reversed to the extent indicated above; and the causes will be remanded to that court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*