569 S.E.2d 422

**THE BOARD OF EDUCATION OF THE COUNTY OF WOOD, a West Virginia Statutory Corporation, Petitioner Below, Appellee,**

v.

**William AIRHART, et al., Respondents Below, Appellants.**

No. 30103.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 27, 2002.

Decided April 5, 2002.

Concurring and Dissenting Opinion of Justice McGraw July 3, 2002.

Dean A. Furner, Spilman, Thomas & Battle, Parkersburg, West Virginia, Attorney for the Appellee.

John Everett Roush, WV School Service Personnel Association, Charleston, West Virginia, Attorney for the Appellants.

ALBRIGHT, Justice:

This is an appeal by individuals (hereinaf-

ter "Appellants")[1] employed by the Wood County Board of Education (hereinafter "BOE") from a March 1, 2001, final order of the Circuit Court of Wood County. The Appellants initiated a grievance procedure with the West Virginia Education and State Employees Grievance Board (hereinafter "Board"), seeking to add twenty-one days to their employment term, thereby increasing their annual employment term to 261 days and entitling them to certain benefits provided to similarly situated 261-day employees.

The administrative law judge at the Level IV grievance hearing granted the grievance, holding that the Appellants, as individuals employed under 240-day annual contracts, were entitled to compensation and benefits under 261-day annual contract terms, in order to satisfy the requirements of West Virginia Code § 18A-4-5b (1990) (Repl.Vol. 2001).[2] The lower court thereafter reversed the Level IV determination by order entered on March 1, 2001. Upon our review of this matter, we reverse the order of the Circuit Court of Wood County and conclude that the 240-day contract employees are entitled to compensation and benefits under 261-day contract terms. The Appellants are not, however, entitled to back pay or retroactive application of this Court's decision.

### I. Facts and Procedural History

The Appellants are employed by the BOE under 240-day annual employment contracts. They filed a grievance with the Board on July 22, 1999, alleging that the BOE, by providing vacation benefits to 261-day employees and denying such benefits to 240-day

employees performing identical or substantially similar work, was in violation of West Virginia Code § 18A-4-5b, requiring that uniformity apply to "all salaries, rates of pay, benefits, increments or compensation for all persons regularly employed and performing like assignments and duties within the county[.]" The Appellants sought an addition of twenty-one days to their employment contracts, to create uniformity with the 261-day contract employees and to permit the Appellants to receive the benefits conferred upon employees working under the 261-day contract.

The Appellants presented extensive testimony regarding their performance of the same duties and responsibilities as various BOE employees working under 261-day annual contracts.[3] According to the Appellants, the primary difference between the 240-day employees and the 261-day employees is that the 261-day employees receive certain paid vacation based upon the length of service.[4] The BOE did not directly contradict this evidence, relying instead upon the assertion that the 240-day contract employees waived any right to seek 260-day contracts by accepting the 240-day contracts under the known circumstances regarding the provision of benefits.

The BOE also asserted that the difference in vacation benefits is appropriate since it is premised upon the difference in actual number of days worked. The Appellants, however, explained that once the number of paid vacation days is subtracted from the 261-day

---

1.  The Appellants are employed in various capacities by the Wood County Board of Education. These capacities include mechanic/substitute bus driver; secretary/accountant; truck driver/warehouse clerk; cabinet maker/carpenter; and roofer/sheet metal/general maintenance.

2.  The administrative law judge at Level IV granted the grievance except as to Grievant Barbara Metz, since she did not file at Level IV. Grievant Beth Baker's grievance was denied as to the period of time after she switched to a Secretary II position. We affirm those determinations of the administrative law judge.

3.  Mr. William Airhart, for instance, explained that the duties of his 240-day contract position did not differ from the 261-day contract employees with whom he regularly worked as a mechanic/substitute bus operator. Mr. Airhart

testified that the responsibilities were identical, including lubrication and repair of bus motors. Likewise, Karen Powell testified that she performs the same financial duties as various other 261-day employees. Randall Thompson explained that he performs cabinet making duties and works as a carpenter discharging the same duties as the 261-day employees.

4.  Employees under the 261-day contract accrue paid vacation on a sliding scale, as follows: first year, six days; second through fifth years, 12 days; sixth through tenth years, 18 days; eleventh year and above, 24 days. Employees under the 240-day contract do not receive paid vacation and must request 21 "non-calendar" unpaid days annually.

contract, there is only a minor, inconsequential difference in days worked. For example, based upon the number of vacation days provided to 261–day employees, such employee works only 255 days during the first year; 249 days after the first year; 243 days after working five years; 237 days after working ten years. The Appellants consequently contend that the differences in actual number of days worked is inconsequential and does not serve as a proper basis for providing enhanced benefits to employees serving under a 261–day contract.

The Level IV administrative law judge granted the Appellants' grievance, based upon the factual finding that the Appellants had demonstrated that their duties were substantially similar to the duties of the 261–day contract holders and that the BOE did not provide uniformity in benefits to the two groups. Specifically, the administrative law judge explained in 'the May 19, 2000, decision, that "[g]rievants have demonstrated they are similarly situated to other WCBOE [Wood County Board of Education] employees, and they are receiving disparate, less favorable, treatment because they have a shorter employment term, and no vacation benefits as do 261–day employees within their classifications." Further, the administrative law judge held that the Appellants had "proven by a preponderance of the evidence that they are similarly situated to 261 day employees, as they perform like assignments and duties, have the same classifications, and work almost the same, or more, days. Thus, they are entitled to the same employment term as the 261 day employees." The administrative law judge ordered the BOE to "instate Grievants to a 261 day employment contract, and to make Grievants whole; to include, but not limited to, paying back pay, with interest, for any 'non-calendar' days they have taken during the pendency of this grievance and for one year prior to the filing of this grievance."

The Circuit Court of Wood County reversed the decision of the administrative law judge, reasoning that the administrative law judge did not properly analyze the evidence that each Appellant "voluntarily engaged in the bidding process for their 240–day posi-tions and accepted those positions with the understanding that such acceptance entailed a loss of an extended employment term...." The lower court also reasoned that requiring the BOE to transform 240–day contracts into 261–day contracts would cause a deleterious economic impact. Further, the lower court opined that the Appellants had failed to prove that they worked the same number of days annually as the 261–day employees.

On appeal to this Court, the Appellants have asserted that the lower court erred in finding that they failed to prove that they were similarly situated to the 261–day employees; the lower court erred in holding that the Appellants had waived a 261–day employment term by accepting positions under the 240–day employment structure; and the lower court erred in holding that the requirement of uniformity does not apply to protect the Appellants under the circumstances of this case.

## II. Standard of Review

This Court specified the standard of review of Grievance Board determinations as follows in syllabus point one of *Cahill v. Mercer County Board of Education*, 208 W.Va. 177, 539 S.E.2d 437 (2000):

Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

*See also Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995) (explaining that "[w]e must uphold any of the ALJ's factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts"). In syllabus point one of *Randolph County Board of Education v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989), this Court also explained: "A final

order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W.Va.Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong."

## III.  Discussion

### A.  The Administrative Law Judge's Determination of Factual Issues

■■■ In syllabus point one of *Morgan v. Pizzino,* 163 W.Va. 454, 256 S.E.2d 592 (1979), this Court asserted that "[s]chool personnel regulations and laws are to be strictly construed in favor of the employee." The statute at issue in the present case is very explicit and has been previously examined by this Court.  As referenced above, West Virginia Code § 18A–4–5b commands that uniformity apply to "all salaries, rates of pay, benefits, increments or compensation for all persons regularly employed and performing like assignments and duties within the county[.]"  A correlative statute, West Virginia Code § 18–29–2 (1992) (Repl.Vol. 1999), prohibits discrimination and favoritism with respect to any employee of a board of education and permits recovery for "any discriminatory or otherwise aggrieved application of unwritten policies or practices of the board" and "any specifically identified incident of harassment or favoritism."  W.Va. Code § 18–29–2(a).[5]  To establish a prima facie case of discrimination or favoritism under West Virginia Code §§ 18–29–2(m) and (*o*), a grievant must establish the following:

(a) that he is similarly situated, in a pertinent way, to one or more other employees;

(b) that the other employee(s) have been given advantage or treated with preference in a significant manner not similarly afforded him; and

(c) that the difference in treatment has caused a substantial inequity to him, and that there is no known or apparent justification for this difference.

*Flint v. Board of Educ. of County of Harrison,* 207 W.Va. 251, 256, 531 S.E.2d 76, 81 (1999).

■■ This Court thoroughly evaluated these statutes and their applicability to 240–day/261–day contract disparities in *Flint* and explained as follows:

Although the BOE acknowledges that plaintiffs Flint and Anderson are similarly situated to Mr. Dawson and Mr. Richards, it claims that it is not required to afford these plaintiffs the same contract terms because W.Va.Code § 18A–4–8 only entitles service personnel to an employment term of 200 days.  The BOE argues that because the statute empowers, but does not require, the BOE to contract with "all or part of these personnel for a longer term," it does not require uniformity in the length of service employees' contracts. We disagree.

*Id.* at 257, 531 S.E.2d at 82.  As this Court has consistently held, "[c]ounty boards of education have substantial discretion in matters relating to the hiring, assignment, transfer, and promotion of school personnel.  Nevertheless, this discretion must be exercised reasonably, in the best interests of the schools, and in a manner which is not arbitrary and capricious."  Syl. Pt. 3, *Dillon v. Board of Educ. of County of Wyoming,* 177 W.Va. 145, 351 S.E.2d 58 (1986).  Under the circumstances of *Flint,* we found that such discretion must be exercised in a manner which conformed with the statutory requirements of uniformity.  We explained that "while it is clear that the BOE had the authority in the early 1980s to replace vacant 261–day positions with 240–day contracts, it could not disregard the uniformity requirement of W.Va.Code § 18A–4–5b."  207 W.Va. at 257, 531 S.E.2d at 82.  The Court consequently held that the 240–day contract employees were "entitled to compensation under 261–day contracts."  *Id.*

In comparing various job responsibilities in *Weimer–Godwin v. Board of Educ. of Ups-*

---

5. West Virginia Code § 18–29–2(m) defines "discrimination" as "any differences in the treatment of employees unless such differences are related to the actual job responsibilities of the employees or agreed to in writing by the employees."  West

Virginia § 18–29–2(*o*) defines "favoritism" as "unfair treatment of an employee as demonstrated by preferential, exceptional or advantageous treatment of another or other employees."

*hair County,* 179 W.Va. 423, 369 S.E.2d 726 (1988), this Court examined the extent to which jobs duties must resemble one another in order to necessitate identical benefits or treatment under the uniformity statute. *Id.* at 427, 369 S.E.2d at 730. This Court reasoned that "once a county board of education pays additional compensation to certain teachers, it must pay the same amount of additional compensation to other teachers performing 'like assignments and duties[.]' " *Id.* Duties of the compared personnel do not have to be identical. "This is not the test." *Id.* The Court found that substantial similarity was sufficient to invoke the statutory protections of uniformity. *Id.* at 428, 369 S.E.2d at 731.

Justice McGraw's dissent in *Flint* also emphasized the importance of adopting a "liberal measure of comparison to determine whether employees are similarly situated for purposes of § 18A-4-5b," noting that the *Flint* decision could permit the uniformity statute to "become a nullity" if school boards attempt to evade this uniformity policy by "expanding the number of employees subject to multiclassification." 207 W.Va. at 258, 531 S.E.2d at 83.

■ The Appellants in the case sub judice presented extensive evidence concerning the identical duties, and the administrative law judge's conclusion that the similarity of duties justified application of the uniformity statute was not clearly wrong. Based upon this Court's review of the evidence present-

ed, we find that the lower court erred in reversing the administrative law judge's factual findings regarding the sufficiency of the Appellant's proof that they performed duties substantially similar or essentially identical to the duties performed by the 261–day employees. We agree with that component of the administrative law judge's conclusion, holding specifically that where county board of education employees perform substantially similar work under 261–day and 240–day contracts, and vacation days provided to 261–day employees reduce their annual number of work days to level at or near the 240–day employees, principles of uniformity demand that the similarly situated employees receive similar benefits. We therefore reinstate the administrative law judge's conclusion that the Appellants should receive 261–day contracts to satisfy the requirement of uniformity.

### B.  Waiver Issue

■ The BOE's contention that the Appellants waived their right to the benefits of a 261–day contract by applying for and accepting a 240–day contract is without merit. When the Appellants bid on the 240–day positions, they did not have the option of insisting on a 261–day contract or the benefits provided to a 261–contract employee, and they did not intentionally forego the opportunity for paid vacation. No waiver can be implied from this situation, and we decline to establish a principle that acceptance of a position serves as a waiver of one's statutory rights to uniformity with fellow employees.[6]

---

**6.**  The Board also argued at Levels II and IV that the Appellants had failed to file their grievance in a timely fashion, pursuant to the requirements of West Virginia Code § 18–29–4(a)(1) (1995) (Repl. Vol.1999), requiring as follows:

> (1) Before a grievance is filed and within fifteen days following the occurrence of the event upon which the grievance is based, or within fifteen days of the date on which the event became known to the grievant or within fifteen days of the most recent occurrence of a continuing practice giving rise to a grievance, the grievant or the designated representative shall schedule a conference with the immediate supervisor to discuss the nature of the grievance and the action, redress or other remedy sought.

In *Flint*, this argument was also forwarded in the same 261–day versus 240–day contract context through the argument that some of the Appellants had known "of the contract disparities for

more than a decade." 207 W. Va. at 255, 531 S.E.2d at 76. This Court promptly disposed of such argument by holding that the uniformity violations were "a continuing practice" under the statute. *Id.* at 256, 531 S.E.2d at 81. Thus, this Court has reasoned that it was not the single event of offering, accepting, or working under a contract which is the grievable event. The uniformity violations are a continuing practice, and the filing of a grievance concerning these alleged violations will not be dismissed as untimely filed simply because the individual had accepted the contract and had begun working under the contract. *See also* syl. pt. 3, *Spahr v. Preston County Bd. of Educ.* 182 W.Va. 726, 391 S.E.2d 739 (1990) ("The legislative intent expressed in W.Va. Code, 18–29–1 (1985), is to provide a simple, expeditious and fair process for resolving problems"); syl. pt. 2, *Duruttya v. Board of Educ. of Cty. of Mingo,* 181 W.Va. 203, 382 S.E.2d 40 (1989) ("In the absence of any evidence of bad

The concept of an actual waiver of one's established rights implies a voluntary act. *Smith v. Bell*, 129 W.Va. 749, 760, 41 S.E.2d 695, 700 (1947) (explaining that "[a] waiver is a voluntary act, and implies an election by the party to give up something of value, or to forego some advantage which he might, at his option, have insisted on and demanded"). This Court examined the issue of implied waiver in *Potesta v. U.S. Fidelity & Guar. Co.*, 202 W.Va. 308, 504 S.E.2d 135 (1998), and explained:

> However, where the alleged waiver is implied, there must be clear and convincing evidence of the party's intent to relinquish the known right. *Hoffman v. Wheeling Sav. & Loan Ass'n*, 133 W.Va. 694, 713, 57 S.E.2d 725, 735 (1950) (" 'A waiver of legal rights will not be implied except upon clear and unmistakable proof of an intention to waive such rights.' " (Citation omitted)). Furthermore, "[t]he burden of proof to establish waiver is on the party claiming the benefit of such waiver, and is never presumed." *Id.* (citing *Hamilton v. Republic Cas. Co.*, 102 W.Va. 32, 135 S.E. 259 [(1926)]). *See also Mundy v. Arcuri*, 165 W.Va. 128, 131, 267 S.E.2d 454, 457 (1980) ("One who asserts waiver . . . has the burden of proving it." (Citations omitted)).

*Id.* at 315, 504 S.E.2d at 142.[7]

In *Teller v. McCoy*, 162 W.Va. 367, 253 S.E.2d 114 (1978), this Court addressed the argument that certain implied habitability rights can be waived and concluded that "since '[i]t is fair to presume that no individual would voluntarily choose to live in a dwelling that had become unsafe for human habitation' *Bowles v. Mahoney*, 91 U.S.App.D.C. 155, 161, 202 F.2d 320, 326 (1952) (Bazelon, J. dissenting) we hold that waivers of the implied warranty of habitability are against public policy." *Id.* at 395, 253 S.E.2d at 130–31. Just as tenants should not be "compelled to waive their rights and accept uninhabitable dwellings," thereby rendering the estab-

lished legal protections "meaningless," individuals seeking employment with the BOE should not be presumed to have waived their rights under the uniformity statute when they accept positions with inferior benefits. *Id.* at 395, 253 S.E.2d at 131. The fact that the Appellants accepted the 240–day position does not in any manner alleviate the uniformity dilemma; nor does it constitute a waiver of the Appellants' rights to file a grievance on this issue and seek redress.

### III. Backpay

■ With regard to the issue of backpay, we do not reinstate the administrative law judge's finding that backpay is appropriate. While the Appellants' initial acceptance of the 240–day contract did not preclude them from later filing a grievance based upon the absence of uniformity, we find that their acceptance of the 240–day contract and performance of duties thereunder renders backpay inappropriate. We appreciate that the ordinary and usual practice in cases of continuing discrimination is to permit recovery of back pay for up to one year prior to the filing of the grievance. Yet, we find some merit in the Board's argument regarding the Appellants' acceptance of the 240–day contract, insofar as such acceptance indicates a general satisfaction with the offered terms of employment. We are not persuaded that in all these circumstances this discrimination represented an intentional effort by the Board to deprive these employees of appropriate compensation and benefits. The multiple employment periods, ranging from 200 to 261–day employees, common in school service personnel employment, can easily be seen as providing the Boards of Education a free hand in setting the number of days of employment contracts. The discrepancies in the 240 and 261–day contract benefits, existent in Wood County and perhaps other counties, suggests that this absence of uniformity was more accidental than intentional.

faith, a grievant who demonstrates substantial compliance with the filing provisions contained in W.Va.Code §§ 18A–2–8 and 18–29–1, *et seq.* (1988) is entitled to the requested hearing").

7. In *Lambert v. Board of Educ. of the Middle Country Cent. School Dist.*, 174 Misc.2d 487, 664 N.Y.S.2d 422 (N.Y.Sup.1997), a resolution which

required all new teacher hires to waive tenure as a condition of employment was rejected. The court reasoned that such resolution exhibited a "lack of regard for the system of laws by which we are governed, and creates a new creature of logic, waiver by fiat." *Id.* at 423.

This Court endeavors to correct the uniformity error, with the recognition that the 240 and 261–day contracts are substantially similar but not identical. Based upon the unique circumstances of this case, we decline to grant back pay, except from the date of the initial favorable decision by the administrative law judge at Level IV on May 19, 2000. Otherwise, only prospective application of our decision is warranted.

IV. Conclusion

The right of the BOE to hire employees for specific periods of employment should not be curtailed by our decision herein. Our conclusions in the case sub judice apply strictly to the 240–day and 261–day contracts in which the differences in term of employment are essentially extinguished by the provision of paid vacation days to the 261–day employees, thus reducing if not completely eliminating any difference in actual number of days worked between the 240–day and 261–day positions.

Based upon the foregoing discussion, the final order of the Circuit Court of Wood County is reversed and the decision of the administrative law judge is reinstated, except to the extent that the administrative law judge's decision permitted the Appellant's to receive backpay prior to the date the administrative law judge rendered an opinion in this case. The request of the 240–day contract employees to have a 261–day contract of employment with all attendant benefits shall be granted effective May 19, 2000, thus satisfying the uniformity requirements of West Virginia Code § 18A–4–5b.

Reversed and Remanded.

McGRAW, Justice, concurring in part, and dissenting in part:

(Filed July 3, 2002)

I agree with the majority opinion in all respects except its failure to permit retroactive application of the rule announced in this case, so as to permit appellants to obtain back pay in the present case. The majority's stance on this issue is particularly puzzling since the Court has otherwise determined that appellants did not waive their right to "seek redress" for the Board's violation of the uniformity requirement of W. Va.Code §§ 18–29–2(a) & 18A–4–5b.

In syllabus point five of *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979), this Court summarized the criteria which should be considered in determining whether retroactivity is appropriate:

In determining whether to extend full retroactivity, the following factors are to be considered: First, the nature of the substantive issue overruled must be determined. If the issue involves a traditionally settled area of law, such as contracts or property as distinguished from torts, and the new rule was not clearly foreshadowed, then retroactivity is less justified. Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions, when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has a narrower impact and is likely to involve fewer parties. Fourth, where, on the other hand, substantial public issues are involved, arising from statutory or constitutional interpretations that represent a clear departure from prior precedent, prospective application will ordinarily be favored. Fifth, the more radically the new decision departs from previous substantive law, the greater the need for limiting retroactivity. Finally, this Court will also look to the precedent of other courts which have determined the retroactive/prospective question in the same area of the law in their overruling decisions.

Based upon these criteria, I see no reason why the Court should not give full retroactive effect to the rule announced in syllabus point five of its opinion in this case. This rule clearly does not have the effect of disturbing a previously settled area of law. Moreover, it is not likely to have a serious financial impact, as any award of back pay would be limited to the one year prior to the filing of the grievance under W. Va.Code § 18–29–3(v) (1992) (Repl.Vol.1999). *See Breza v. Ohio County Bd. of Educ.*, 201

W.Va. 398, 401, 497 S.E.2d 548, 551 (1997) (per curiam).

For these reasons, I respectfully concur in part, and dissent in part from the Court's opinion in this case.